LEOPOLD ZIMMERMANN and Others, Respondents, v. HENRY G. TIMMERMANN and Others, Appellants.

First Department, June 28, 1907.

Sale of bonds to be delivered when issued — buyer bound by terms of agreement governing issue of bonds — premature action.

Action for breach of contract to sell and deliver bonds.

The defendants entered into a written contract stating that they had sold to the plaintiffs certain bonds of the United Railroads of San Francisco " payable and deliverable when, as and if issued." It appeared that the bonds sold were to be issued by a certain date by a syndicate incorporated to purchase the shares of certain street railway companies of San Francisco, which were to be merged and consolidated into a new company to be known as the " United Railroads of San Francisco." The bonds were to be delivered to trustees for certification, they being empowered by a provision of the syndicate agreement to make sales before the issue of bonds was complete, under which power they had disposed of bonds prior to the day set for the completed issue. The defendants had not yet been able to obtain the bonds sold to the plaintiffs, and upon demand, delivery was refused on the ground that the demand was premature.

Held, that the plaintiffs were not entitled to a delivery of the bonds until the issue thereof had been completed;

That both parties to the contract of sale were bound by the terms of the existing syndicate agreement, under which the bonds were to be subsequently issued, and that the obligation of the defendants to deliver did not arise until the bonds were actually issued by those controlling the time and condition of the issue;

That the fact that the trustees under the express powers given in the syndicate agreement had sold bonds prior to the completed issue did not oblige the defendants to deliver under their contract with the plaintiffs.

PATTERSON, P. J., dissented.

APPEAL by the defendants, Henry G. Timmermann and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 10th day of April, 1906, upon the decision of the court rendered after a trial at the New York Trial Term, a jury having been waived.

*Joseph Fettretch,* for the appellants.

*Alton B. Parker,* for the respondents.

INGRAHAM, J.:

This action was brought for the breach of several contracts, by which the defendants sold to the plaintiffs certain four per cent

bonds of the United Railroads of San Francisco. One contract, dated March 17, 1902, was for $100,000 par value of said bonds at eighty-nine per cent, with interest; the one dated the same day was for $100,000 par value at eighty-nine per cent; one dated March 18, 1902, for the purchase of $114,000 par value at eighty-eight and three-fourths per cent; one dated March 18, 1902, for the purchase of ten bonds at eighty-eight and five-eighths per cent; one dated the same day for the purchase of fifty-eight bonds at eighty-eight and one-half per cent; one dated March 24, 1902, for fifty of said bonds at eighty-nine and one-half per cent, and one dated April 22, 1902, for $40,000 par value of said bonds at ninety and one-half per cent and interest. The contract of March 17, 1902, is as follows:

" We have sold to Zimmermann & Forshay One Hundred Thousand Dollars, par value, of the New 4% Bonds of the United Railroads of San Francisco at 89 per cent, payable and deliverable when, as and if issued, with accrued interest at the rate of four per cent per annum, either party having the right to call for deposits according to the requirements of Article XXX of the Constitution of the N. Y. Stock Exchange, and on the failure of the party called upon to comply with the calls for deposits, this contract shall mature, with the right and authority to the party not in default to close the contract in accordance with the rules of the New York Stock Exchange.

" Due when issued.

"TIMMERMANN, DAHLGREN & CO."

It appeared that on February 17, 1902, Brown Brothers & Co. of New York issued a plan or proposal which was headed: " Plan for the Purchase of the Shares of Certain San Francisco Railway Companies by the ' United Railways Investment Company of San Francisco,' a New Jersey Corporation, and for the Subsequent Vesting of the Same and Ultimately of the Properties and Franchises of said Companies in the ' United Railroads of San Francisco,' a Corporation to be Organized Under the Laws of California." In this plan it was proposed to cause the incorporation in California of a company to be known as the United Railroads of San Francisco, to which the shares of stock of the San Francisco railroads should be sold; that the corporation the United Railroads of San Francisco should issue

four per cent bonds to the aggregate amount of $35,275,000, of which there was to be presently issued in payment of the stock of the several constituent companies $20,000,000, the balance of the bonds to be reserved for the payment of outstanding obligations of the companies and for future betterments, improvements and acquisitions. Annexed to this plan was an agreement to be entered into by the United Railways Investment Company and Brown Brothers & Co., representing the owners of the capital stock of the several railroads who were to be merged or consolidated into the new company and the persons and corporations who should sign the agreement or accept a participation or become holders of the subscription receipts issued by the management. It was provided in that agreement that the United Railways Investment Company should cause to be organized a corporation to be known as the United Railroads of San Francisco, who were to acquire all the property rights and franchises of the several constituent companies or the stock thereof. The whole capital stock of this corporation to be known as the United Railroads of San Francisco was to be issued forthwith to the managers and in payment for such stock the company was to deliver to Brown Brothers & Co. $17,408,000 four per cent bonds of the said company as soon as said bonds could be legally executed and delivered by the said United Railroads of San Francisco. The holders of the shares of stock of the constituent companies agreed to sell to Brown Brothers & Co. their shares of stock in the constituent companies It was further agreed that the managers were given the right to the absolute control of the bonds of the new company until the 1st of February, 1903, and that they should have the right to offer said bonds at public or private sale at any time prior to the said date at the best price obtainable in their judgment, not to be less than ninety per cent of the face value thereof, together with accrued interest. Those participating in this plan were to receive from Brown Brothers & Co. a receipt of a subscription to the syndicate for underwriting the purchase of the stock of these constituent companies under this plan, which would entitle such participant to receive the bonds and stock or the proceeds of the bonds, if sold, when the same were ready for delivery upon surrender of the certificate. It was further agreed by the participants that the managers appointed their attorneys to do all such other and additional matters

and things as in the sole judgment of the managers might be wise and to the interest of the participants, including any alteration, change or modification of the terms and conditions of the plan of purchase. This plan seems to have been carried out and a corporation known as the United Railroads of San Francisco duly organized. That corporation executed the four per cent bonds and delivered them to the trustees therein named, the Union Trust Company of San Francisco, for certification on various dates between May 23, 1902, and September 25, 1902. It was on March 17, 1902, that the first contract was made by which the defendants sold to the plaintiffs $100,000 par value of these bonds to be delivered " when, as and if issued."

It must be assumed, I think, that the parties contemplated the issue of the bonds as a whole under whatever arrangement or agreement then existed by which those entitled to the bonds would become entitled to them so that they could be available for sale and delivery in the market. The plaintiffs swear that they had no knowledge of the terms of this proposed plan under which the bonds were to be issued, but it seems to me that this is entirely immaterial. They knew that they were buying bonds of a street railroad corporation in San Francisco that were to be issued in the future and that Brown Brothers & Co. were the managers, and they made a contract which was based upon a future delivery of the bonds and which by express terms postponed the delivery of such bonds until they were actually issued. The contract thus having been made, based upon a subsequent issue of the bonds, both parties were bound by the terms of the existing agreement under which the bonds were to be subsequently issued, and the obligation of the defendants to deliver the bonds did not arise until the bonds were actually issued by those who controlled the time and conditions of such issue. The time of issue of these bonds was under the control of Brown Brothers & Co. as the managers of the syndicate, and by the agreement under which these bonds were to be issued the 1st of February, 1903, was fixed as the time at which the participants in this plan were to be absolutely entitled to their bonds. The plan contemplated a final distribution on February 1, 1903, unless prior to that time the bonds should have been sold by Brown Brothers & Co., in which case the proceeds of the bonds were to

be distributed. I think it would be unreasonable to assume that the defendants obligated themselves to deliver these bonds at any period before that time on mere proof that Brown Brothers & Co. had sold a limited number of the bonds. The plaintiffs were not entitled to any particular bonds that were issued, but when the bonds were actually issued the obligation of defendants to deliver them arose. But until the issue was complete, until the bonds as a class had been issued, the right of the plaintiffs to call for a delivery of the bonds had not accrued. As under the contract the plaintiffs were not entitled to any particular bonds or the bonds that were first issued if the bonds were issued in installments, I do not see how the plaintiffs could be entitled to call upon the defendants to deliver to them the bonds of any particular installment that had been issued, or bonds generally because an installment had been issued. As before stated, the contract was made in the city of New York and was to be performed there. The corporation that was to issue the bonds was a California corporation, and under the existing plan at the time the contract was made there was to be $20,000,000 of these bonds issued, but the time of final issue was to be determined by the syndicate managers, Brown Brothers & Co., except that the final distribution of bonds was to occur not later than February 1, 1903. The right that was reserved to Brown Brothers & Co. to sell any portion of these bonds before that time and their exercise of that right by a sale of a portion thereof was not the issue of the bonds as a whole within the meaning of the contract, construed according to the existing conditions at the time it was made. The defendants had as much right to claim that their contract related to the last and final installment of the bonds issued as the plaintiffs had the right to insist that it related to the first or second installment of the bonds that were issued.

It seems that the trustee for the holders of these bonds was the Union Trust Company of San Francisco and that on the 7th of June, 1902, the deed of trust with the United Railroads of San Francisco was executed; that on the 18th of April, 1902, there had been organized in San Francisco a syndicate for the purchase of bonds of the United Railroads of San Francisco. Prior to the organization of this syndicate an agreement had been made between Mr. Hellman, the president of the Union Trust Company, and

Brown Brothers & Co., by which Mr. Hellman agreed to purchase $2,500,000 of these bonds at ninety cents on the dollar "deliverable when and as issued, and payable in New York on or before June 10, 1902, against delivery of the bonds in San Francisco." Mr. Hellman was given an option on an additional $2,500,000 of said bonds also "deliverable when and as issued," the option to be exercised on or before June 1, 1902, and if exercised payment in settlement to be made in New York on or before July 1, 1902; he was also given a further option on $5,000,000 of the bonds at ninety-one and accrued interest "deliverable when and as issued," this option to be exercised on or before July 1, 1902, and payment to be made in the months of August, September, October, November and December, 1902. There was a condition annexed to this sale that none of the bonds were to be offered or sold outside of the State of California, but that was finally modified so that that condition was stricken out, the purchasers stating that they did not propose to sell any bonds in New York city, but that they could not refuse to execute any orders that might be brought to them by brokers or investors. This purchaser took the additional $2,500,000 of these bonds, but did not take the $5,000,000 of bonds which were to be subsequently delivered. Thus $5,000,000 of the $20,000,000 of bonds were issued to Hellman; $3,500,000 of the bonds were delivered in San Francisco on June 16, 1902, and $1,500,000 of the bonds were delivered on July 2, 1902. The balance of the $20,000,000 par value of the bonds seems to have been delivered by the trustee to Brown Brothers & Co. in New York. The San Francisco syndicate sold and delivered the $5,000,000 purchased by them on the market in San Francisco subsequent to June 16, 1902, and from that time on there appears to have been a market for the bonds and they could be purchased either in New York or San Francisco. So far as appears, however, none of the other bonds were issued except the $5,000,000 of bonds sold to the San Francisco syndicate, until some time early in 1903.

On June 21, 1902, the plaintiffs served upon the defendants a demand for the bonds covered by these contracts. In reply to that letter the defendants wrote to the plaintiffs that the bonds were sold "when, if and as issued;" that the defendants had been notified by Messrs. Brown Brothers & Co., who were the parties to issue the

bonds, that the said bonds had not been issued; that the bonds not having been issued, the request of the plaintiffs was premature, and defendants were not able to comply with it. Thereupon, on June 23, 1902, the plaintiffs wrote to the defendants giving them notice that they had failed and omitted to deliver the bonds and that plaintiffs would purchase the same in the open market on Tuesday June 24, 1902, unless before two P. M. on that day the defendants delivered the bonds to the plaintiffs as contracted for. In reply to this notice the defendants wrote to the plaintiffs that the bonds were not issued within the meaning of the contract; that the buyer was not justified in attempting to bid in the bonds under the conditions, and notifying the plaintiffs that they would decline to recognize any purchase under those conditions, and the defendants would deliver to the plaintiffs under the contract as soon as the bonds were issued.

My construction of this contract, as before indicated, is that the issue of these securities was the general issue by the syndicate managers by which the bonds would come into the market and become available for delivery. On June 16, 1902, $3,500,000 of the bonds had been delivered to the San Francisco syndicate. It was most unreasonable to insist that these defendants would have knowledge of that fact and have a person on hand in San Francisco to make a purchase of the bonds when offered for sale and then at once to send them to New York. Yet, considering the distance from New York to San Francisco, it is quite evident that, but for some such arrangement, it would have been impossible for the defendants to procure the bonds in time to comply with the plaintiffs' demand. The recovery is based upon a failure to deliver the bonds on or before June 24, 1902, eight days after they were first delivered to the San Francisco syndicate. But as I read this contract, the bonds were not deliverable until the issue of the bonds by the syndicate managers in New York had been actually completed, so that those persons who were entitled to participate in the syndicate agreement could get the bonds; and that, under the agreement, was not to be until February 1, 1905, unless the syndicate managers should make a final distribution before that time. If all the bonds had been sold and delivered by Brown Brothers & Co., so that the issue of the bonds was com-

plete, undoubtedly the plaintiffs would have had the right to call upon the defendants for the bonds; but the mere fact that a part of the bonds had been sold in San Francisco did not, under this contract as I view it, give the plaintiffs the right to call for a delivery of the bonds; and the failure of the defendants to comply with that demand was not, therefore, a breach of the contract. The ability to procure these bonds in the New York market in July and August would not justify the plaintiffs in recovering in this action, for they must justify their right to recover at the time the action was brought, which was the 7th of July, 1902.

I think, therefore, that this judgment must be reversed and a new trial ordered, with costs to the appellants to abide the event.

CLARKE, HOUGHTON and LAMBERT, JJ., concurred; PATTERSON, P. J., dissented.

Judgment reversed, new trial ordered, costs to appellants to abide event.